### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:05CR303 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| RHONDA J. TURPIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This matter came before this Court for a bench trial from August 30 through

September 14, 2006.  When there is a bench trial in a criminal matter, under Federal Rule

of Criminal Procedure 23(c) the Court must make its specific findings of fact in open

court or in a written decision or opinion *only* when a party requests such before the

verdict is rendered.  However, no such request was made by the Defendant.  Regardless

of the failure to make such a request, the Court finds itself compelled to enter the

following Findings of Fact and Conclusions of law to supplement the already rendered

verdicts made on the record.   It is noted that the Court has taken a period of time in the

issuance of this Opinion due to the complex nature of the case and the numerous volumes

of transcripts from the trial.

## PROCEDURAL HISTORY

An Indictment was originally filed on June 22, 2006, charging Defendant Rhonda

J. Turpin ("Defendant"), along with others, with the following offenses against the

United States of America: Count 1 - conspiracy in violation of 18 U.S.C. § 371; Counts 2

through 16 and 21 through 27 - making, uttering and possessing and the aiding and

abetting of making, uttering and possessing counterfeit or forged securities of an organization in violation of 18 U.S.C. § 513(a) and 2; Count 28 - fraud and related activity in connection with access devices in violation of 18 U.S.C. § 1029(a)(5) and 2; Counts 29 and 30 - bank fraud in violation of 18 U.S.C. § 1344 and 2; Count 31 - identity theft in violation of 18 U.S.C. § 1028(a)(7) and 2; Count 32 - possession of identification document-making implements in violation of 18 U.S.C. § 1028(a)(5) and 2; Counts 33 and 34 - possession of counterfeiting implements in violation of 18 U.S.C. § 513(b) and 2; Count 35 - possession of identification document-making implements in violation of 18 U.S.C. § 1028(a)(5) and 2; Count 36 - conspiracy to submit false claims in violation of 18 U.S.C. § 286; Counts 37 through 60 - false claims in violation of 18 U.S.C. § 287 and 2; and Count 61 - identity theft in violation of 18 U.S.C § 1028(a)(7) and 2.  The Indictment also seeks forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A) and (B) of various items seized from the Defendant's real property located at 3561-3563 Chelton Road, Shaker Heights, Ohio and from a rental unit located at 24261 Lakeshore Blvd., Apt. 1150 Euclid, Ohio which the Plaintiff United States of America (the "Government") alleges constitutes or is derived from proceeds obtained directly or indirectly as a result of the above-referenced violations of federal criminal law.

All of the co-defendants pleaded guilty to various charges.  Defendant waived her right to trial by jury in writing on August 8, 2006; the Government consented, and the Court approved same as required by Fed. R. Crim. P. 23, allowing the case to be tried by the Court.

The trial in this case was held from August 30, 2006 through September 14, 2006. After completion of the evidence, the parties submitted their closing arguments by way of

written briefs.  (ECF Docs. #170, 171 and 175).  On December 12, 2006, the Court

entered, on the record, the following verdicts as to Defendant: guilty of Counts 1-9, 11-

16, 21, 26-56, and 58-61; Count 10 dismissed upon motion by the Government; not guilty

of Counts 22-25 and 57.  The Court, having considered the testimony, exhibits and

stipulations of the parties renders its verdict and in accordance with Rule 23 of the

Federal Rules of Criminal Procedure and sets forth its specific findings of fact and

conclusions of law in this Opinion.

## DISCUSSION

In order to find Defendant guilty on **Count 1**, the Government must prove beyond

a reasonable doubt that Defendant violated 18 U.S.C. § 371.  That statute states in

pertinent part:

> If two or more persons conspire either to commit any offense against the
> United States, or to defraud the United States, or any agency thereof in any
> manner or for any purpose, and one or more of such persons do any act to
> effect the object of the conspiracy . . .  [they have committed a crime
> against the United States.]

At trial, Judy Elersic testified that Defendant recruited her to engage in fraudulent

transactions with various financial institutions.  Elersic met Defendant through a mutual

acquaintance in June of 2002.  (Transcript, Vol. 1, p. 149).  At that time, Elersic was

addicted to crack cocaine.  *Id.* at 153.  Defendant originally was interested in having

Elersic use stolen credit cards and checks to fraudulently obtain money from financial

institutions.  *Id.* at 151.  At one time, a man by the name of "Tut" rode with the two and

went into buildings to steal a wallet or purse to obtain that person's personal identifier

information.  *Id.* at 152-153)  A few months later, the relationship changed wherein they

would use stolen personal identifier information to obtain fraudulent loans from financial

3

institutions.  *Id.* at 154.  The specific occurrences of these transactions will be discussed in more detail later in this Order.

Notwithstanding the fact that Elersic testified in consideration of favorable treatment by the Government and her prior criminal record the Court credits her testimony.

At trial, Candice Keene testified that she originally met with Defendant in an attempt to make some fast money.  *Id.* at 70.  Keene, Defendant, and another individual would travel to an office building where the other individual would steal the wallet or purse of another, obtaining a driver's license, checkbook or other identification.  *Id.* at 72. Keene filled out one of the stolen checks and cashed it at the bank because she looked like the picture on the individual's driver's license.  *Id.*  The three split the proceeds.  *Id.* Additionally, Defendant provided Keene with another's personal identification information for the purpose of obtaining a fraudulent loan.  *Id.* at 76-77.  Defendant instructed Keene how to apply for fraudulent loans and when Keene was actually on the phone applying for the loan, if she had questions or was unsure about what was being asked, she would write down the question for Defendant and Defendant would instruct her as to how to proceed.  *Id.* at 77.  Defendant provided Keene with a credit report of the person to whose name was to be used in obtaining the fraudulent loan.  *Id.*  Defendant also provided Keene with her cellular phone number for use as the contact number with the bank.  *Id.* at 79.  Defendant also provided Keene with a driver's license in the name of the person whom the loan was being made to with Keene's picture.  *Id.* at 78-79. Defendant also told Keene to ask at the financial institution what bank she should take the check to, to get cashed.  *Id.* at 80.   Finally, the proceeds from the fraudulent loans

would be paid out with one-third to Defendant, one-third to Keene, and one-third to the person who had made the false driver's license.  *Id.*  The specific occurrences of these transactions will be discussed in more detail later in this Order.

Notwithstanding the fact that Keene testified in consideration of favorable treatment by the Government and her prior criminal record the Court credits her testimony.

At trial, Danny Waddell testified that he met Defendant through a friend. (Transcript, Vol. 6, p. 875)  He was attempting to get an ID because he was on the run from an escape charge out of Illinois.  *Id.*  Waddell's friend set up a meeting with him and Defendant and Kathy Davie and said that they would help him to get an ID if he would work with them cashing some checks.  *Id.* at 875.

Defendant and Davie did provide Waddell with a false driver's license containing his picture and another man's name and personal identifier information.  *Id.* at 880. Waddell, with Davie's assistance, set up charge accounts in that false name.  *Id.* at 878. Waddell used those accounts to purchase electronic equipment and other items.  *Id.* Those items were turned over to Davie to be given to Defendant.  *Id.* at 879.

Waddell also testified that he received personal checks from Defendant.  *Id.* at 889.  Defendant typed up the fraudulent checks at her residence.  *Id.* at 890-91.  Waddell then would take the checks to a bank, open an account, and any starter checks, ATM cards or paperwork was turned over to Davie who turned it over to Defendant. (Transcript, Vol. 7, pp. 895-96)  There was also an instance when Waddell took a cash withdrawal from one of the accounts and split the proceeds with Davie.  *Id.* at 898.

Defendant later approached Waddell about taking out fraudulent personal loans at various financial institutions in the Cleveland area.  *Id.* at 901.  Defendant provided Waddell with an identification card with his picture on it, a credit report with the individual's name on it that he was to get the loan in, and Waddell would call in a loan application in Defendant's presence.  *Id.* at 902.  Defendant would drive Waddell to the financial institution to obtain the loan, drive him to a suggested bank to cash the checks and would then split the proceeds.  *Id.* at 901-906.  The specific incidents will be discussed in greater later in this Order.

Notwithstanding the fact that Waddell testified in consideration of favorable treatment by the Government, his prior criminal record, and severe drug problem, the Court credits his testimony.

At trial, Richard Taylor testified that he met Defendant through a friend. (Transcript, Vol. 6, p. 803-04)  His friend informed him about a money making opportunity with Defendant and when he met Defendant, she said Taylor was "perfect" for the job.  *Id.* at 804.  Defendant discussed with Taylor that he was going to imposter someone else and took him to a local store to have passport photos taken.  *Id.* at 805-06.

Within a few days, Defendant provided Taylor with a driver's license containing his picture and the personal identifier information of another person.  *Id.* at 807. Defendant drove Taylor to Columbus for the purpose of obtaining a fraudulent loan.  *Id.* at 809.  During the trip, Defendant gave Taylor a copy of the person's credit report that he would be using to obtain the loan.  *Id.*  Defendant assisted Taylor in applying for the loan and the proceeds were split just as those from other fraudulent loans discussed

6

herein.  *Id.* at 810-20.  These specific instances are discussed in more detail later in this Order.

Notwithstanding the fact that Taylor testified in consideration of favorable treatment by the Government, his prior criminal record, and severe drug problem, the Court credits his testimony.

At trial, Jimmie Dunbar testified that he met Defendant while in Cleveland and they discussed making money by opening up a bank account.  (Transcript, Vol. 4, p. 583) Defendant took Dunbar to banks to open a bank account in his name and other individuals' names.  *Id.* at 585.  Defendant provided Dunbar with the money to open the accounts.  *Id.*  Defendant and Davie had discussed with Dunbar how to open a fraudulent account, including memorizing that person's personal information.  *Id.* at 586.  The two also discussed with Dunbar how to use the starter checks to receive funds.  *Id.* at 589-90. Those checks were used to purchase merchandise at a variety of stores.  *Id.* at 590-91. These checks resulted in significant losses to the banks they were drawn from.

Notwithstanding the fact that Dunbar testified in consideration of favorable treatment by the Government, his prior criminal record, and severe drug problem, the Court credits his testimony.

At trial, Charles Griffin testified that he met Defendant and Davie through Davie's sister.  (Transcript, Vol. 5, p. 750)  He discussed with Defendant that he was to follow Davie's instructions.  *Id.* at 753.  Griffin received fraudulent driver's licenses with his picture and other person's personal identifier information and credit reports in the individual's name that he was to be impersonating.  *Id.*  at 754, 756.  The loan applications were done by another individual and then Griffin would go to the financial

institution to obtain the loan with the fraudulent identification. *Id.* at 755. The proceeds were split and distributed as the other fraudulent loans were. *Id.* at 764. The specifics of these transactions will be discussed in more detail later in this Order.

Notwithstanding the fact that Griffin testified in consideration of favorable treatment by the Government, his prior criminal record, and severe drug problem, the Court credits his testimony.

At trial, Kathy Davie testified that Defendant prepared fraudulent federal tax returns in other persons' names in order to receive the refunds. (Transcript, Vol. 2, pp. 290-293) She detailed how this was done and where some of the fraudulent information came from. *Id.* at 292-95. Davie also testified how the fraudulent check cashing scheme and fraudulent loan scheme occurred, including the use of stolen personal information, calling in fraudulent applications, the cashing of the checks and distribution of funds. *Id.* at 300-354.

Notwithstanding the fact that Davie testified in consideration of favorable treatment by the Government, her significant involvement in the scheme, and prior criminal record, the Court credits his testimony.

Based on the evidence presented, the Court finds that the Defendant conspired with multiple persons to defraud the Internal Revenue Service ("IRS") and various financial institutions throughout the State of Ohio. Therefore, it is determined that Government has proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 371 and thus finds her **GUILTY of Count 1**.

In order to find Defendant guilty on Counts 2 through 16, and 21 through 27, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 371.  That statute provides in pertinent part,

> (a) Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government . . . [has committed an offense against the United States]

**Count 2** of the Indictment alleges that on September 9, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Beneficial Financial in the amount of $3,000.01, payable to Carla G. Senn, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Carla Senn's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Beneficial Financial[1] in North Randall, Ohio on September 9, 2002 to obtain a fraudulent loan in the amount of $3,000.01.  Defendant was present when the call to Beneficial was placed. Additionally, Defendant drove Elersic to Beneficial to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 1 & 2 respectively)[2]  The two split the proceeds.  (Transcript, Vol. I, pp. 154-57)  Beneficial suffered a total loss on the loan.

---

[1] The parties stipulated that Beneficial Financial was engaged in interstate commerce.
[2] The parties stipulated to the authenticity of Gov. Exhibits 1 and 2.

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 2**.

In **Count 3** of the Indictment, the Government claims that on or about September 12, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing two forged securities from Beneficial Financial in the amounts of $3,089.82 and $509.95, payable to Deborah T. Uber, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Deborah Uber's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Beneficial Financial in North Randall, Ohio, on September 12, 2002, to obtain a fraudulent loan in the amount of $3,599.77.  Defendant was present when the call to Beneficial was placed. Additionally, Defendant drove Elersic to Beneficial to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 5 & 3 respectively)[3]  The two split the proceeds.  (Transcript, Vol. I, pp. 160-63)  Beneficial suffered a total loss on the loan.  Elersic also identified her handwriting forging the endorsement on the Uber check which was used to pay for an insurance policy.  (Gov. Exhibit 4)[4]

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 3**.

---

[3] The parties stipulated to the authenticity of Gov. Exhibits 3 and 5.
[4] The parties stipulated to the authenticity of Gov. Exhibit 4.

In **Count 4** of the Indictment, the Government claims that on or about September 9, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Household Finance in the amount of $5,000.00, payable to Carla Senn, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Carla Senn's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Household Finance in Oakwood Village, Ohio, on September 9, 2002, to obtain a fraudulent loan in the amount of $5,000.00.  Defendant was present when the call to Household Finance was placed.  Additionally, Defendant drove Elersic to Household Finance to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 7 & 6 respectively)[5]  The two split the proceeds.  (Transcript, Vol. I, pp. 163-64)  Household Finance suffered a total loss on the loan.

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. §513 (a) and thus finds her **GUILTY of Count 4**.

In **Count 5** of the Indictment, the Government claims that on or about September 12, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged check from Citi Financial in the amount of

---

[5] The parties stipulated to the authenticity of Gov. Exhibits 6 and 7.

$5,000.06, payable to Jean Stutzman, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Candice Keene testified that Defendant provided her with Jean Stutzman's stolen personal information, including a credit report, driver's license and pay stub (Gov. Exhibit 9), so that Keene could obtain a fraudulent loan. That information was used when Keene called Citi Financial in North Randall, Ohio, on September 12, 2002, to obtain a fraudulent loan in the amount of $5,000.06. Defendant was present when the call to Citi Financial was placed. Additionally, Defendant drove Keene to Citi Financial to sign the loan paper and then drove her to the bank to cash the forged loan check. (Gov. Exhibits 10 & 8 respectively)[6] The two split the proceeds. (Transcript, Vol. I, pp. 81-86) Citi Financial suffered a total loss on the loan.

During the execution of the March 20, 2003, search warrant by the Secret Service, at Defendant's residence at 3561/3563 Chelton Road, Shaker Heights, Ohio, Stutzman's personal information was discovered on a piece of paper in Defendant's handwriting. (Transcript, Vol. p. 25) During a later search on August 13, 2004, at Apt. 1150 Watergate, a credit card in Stutzman's name was also discovered by the Secret Service. (Gov. Exhibits 122 & 314)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 8, 9, and 10, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan. (Transcript, Vol. IV, p. 554)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 5**.

---

[6] The parties stipulated to the authenticity of Gov. Exhibits 8 and 10.

In **Count 6** of the Indictment, the Government claims that on or about September 16, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $7,499.92, payable to Susan Rosenfeld, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Susan Rosenfeld's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Citi Financial in North Olmsted, Ohio, on September 16, 2002, to obtain a fraudulent loan in the amount of $7,499.92.  Defendant was present when the call to Citi Financial was placed.  Additionally, Defendant drove Elersic to City Financial to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 12 & 11 respectively)  The two split the proceeds.  (Transcript, Vol. I, pp. 165-166)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 11 and 12, and that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 555-56)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 6**.

In **Count 7** of the Indictment, the Government claims that on or about September 19, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the

making, uttering and possessing a forged security from American General Finance in the amount of $5,000.00, payable to Susan Rosenfeld, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Susan Rosenfeld's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan. That information was used when Elersic called American General Finance in Richmond Heights, Ohio, on September 12, 2002, to obtain a fraudulent loan in the amount of $5,000.00. Defendant was present when the call to American General Finance was placed. Additionally, Defendant drove Elersic to American General Finance to sign the loan paper and then drove her to the bank to cash the forged loan check. (Gov. Exhibits 14 & 13 respectively) The two split the proceeds. (Transcript, Vol. I, pp. 166-167)

Timothy Davis testified to the authenticity of Gov. Exhibits 13 and 14, and that American General Finance engaged in interstate commerce and suffered a total loss on the loan. (Transcript, Vol. IV, p. 537-54)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 7**.

In **Count 8** of the Indictment, the Government claims that on September 20, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Beneficial Financial in the amount of $4,999.81,

14

payable to Susan Rosenfeld, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Susan Rosenfeld's stolen personal information, including a credit report and driver's license, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Beneficial Financial in the greater Cleveland, Ohio area, on September 20, 2002, to obtain a fraudulent loan in the amount of $4,999.81.  Defendant was present when the call to Beneficial Financial was placed.  Additionally, Defendant drove Elersic to Beneficial to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 15)[7]  The two split the proceeds.  (Transcript, Vol. I, p. 168)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 8.**

In **Count 9** of the Indictment, the Government claims that on or about September 27, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $7,499.92, payable to Barbara Daniels, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Barbara Daniel's stolen personal information, including a credit report and driver's license (Gov. Exhibit 17) and counterfeit pay stub, so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Citi Financial in North Olmsted, Ohio, on September 27, 2002,

---

[7] The parties stipulated as to the authenticity of Gov. Exhibit 15.

to obtain a fraudulent loan in the amount of $7,499.92.  Defendant was present when the call to Citi Financial was placed.  Additionally, Defendant drove Elersic to Citi Financial to sign the loan paper and then drove her to the bank to cash the forged loan check. (Gov. Exhibits 18 & 16 respectively)  The two split the proceeds.  (Transcript, Vol. I, pp. 170-73)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 16, 17, and 18, and that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 556-57)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 9**.

**Count 10** of the Indictment was voluntarily dismissed by the Government.

In **Count 11** of the Indictment, the Government claims that on or about October 11, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing two forged securities from Citi Financial in the amount of $3,000.04 and $4,500.00, payable to Michelle Wochele, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Michelle Wochele's stolen personal information, including a credit report and driver's license, and a counterfeit pay stub (Gov. Exhibit 23) made by Defendant containing Wochele's personal information so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Citi Financial in Lakewood, Ohio, on October 11, 2002, to obtain

16

fraudulent loans in the amount of $3,000.04 and $4,500.00.  Defendant was present when the call to Citi Financial was placed.  Additionally, Defendant drove Elersic to Citi Financial to sign the loan paper and then drove her to the bank to cash the forged loan check.  (Gov. Exhibits 25, 21 & 22 respectively)  The two split the proceeds.  (Transcript, Vol. I, pp. 176-179)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 21, 22, 23, and 25, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 557-58, 560)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 11**.

In **Count 12** of the Indictment, the Government claims that on or about October 17, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $5,000.00, payable to Laura Wagner, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Laura Wagner's stolen personal information, a credit report.  Defendant also provided Elersic with a counterfeit driver's license and pay stub (Gov. Exhibit 28) containing Wagner's personal information so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Citi Financial in Mayfield Heights, Ohio, on October 17, 2002, to obtain a fraudulent loan in the amount of $10,000.00.  Defendant was present when the call to Citi

Financial was placed.  Additionally, Defendant drove Elersic to Citi Financial to sign the loan paper and then drove her to the bank to cash both of the forged loan checks, each for $5,000.00.  (Gov. Exhibits 29, 26, and 27 respectively)  The two split the proceeds. (Transcript, Vol. II, pp. 187-192)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 26 through 29, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 187-93)

Although the Indictment indicates that the amount of the forged security was for $5,000.00, clearly the testimony and evidence presented shows that there were actually two forged checks, each for $5,000.00, for the total loan amount of $10,000.00.  Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 12**.

In **Count 13** of the Indictment, the Government claims that on or about October 21, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $7,500.04, payable to Betty Westbrook, with the intent to deceive the organization, affecting interstate commerce, thus affecting interstate commerce.

At trial, Keene testified that Defendant provided her with Betty Westbrook's stolen personal information, including a credit report and a pay stub (Gov. Exhibit 31), so that Keene could obtain a fraudulent loan.  Defendant provided Keene with a fraudulent driver's license with Keene's picture and the personal identification information of Betty

18

Westbrook.  This information was used when Keene called Citi Financial at the Mayfield Road branch in South Euclid, Ohio, on October 21, 2002, to obtain a fraudulent loan in the amount of $7,500.04.  Defendant was present when the call to Citi Financial was placed.  Additionally, Defendant drove Keene to Citi Financial to sign the loan paper (Gov. Exhibit 32) and then drove her to the bank to cash the forged loan check.  The two split the proceeds.  (Transcript, Vol. I, pp. 86-92)  The Government introduced evidence that the loan proceeds issued to a Betty Westbrook on October 21, 2002, from the South Euclid, Ohio branch was for $7,500.04.  (Gov. Exhibit 30)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 31 and 32, and that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 561)

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 13.**

In **Count 14** of the Indictment, the Government claims that on or about October 24, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing one or more forged securities from American General Finance in the amount of $3,500.00, $3,500.00, and $300.00, payable to Maria Bonini, with the intent to deceive the organization, affecting interstate commerce, thus affecting interstate commerce.

At trial, Keene testified that Defendant provided her with Maria Bonini's stolen personal information, including a credit report and a pay stub (Gov. Exhibit 36), so that

Keene could obtain a fraudulent loan in the amount of $7,300.00. Defendant provided

Keene with a fraudulent driver's license with Keene's picture and the personal

identification information of Bonini. This information was used when Keene called

American General Finance in Middleburg Heights, Ohio, on October 24, 2002, to obtain

a fraudulent loan in the amount of $7,300.00 ($300.00 was for a life insurance policy).

Defendant was present when the call to American General was placed. Additionally,

Defendant drove Keene to American General to sign the loan paper (Gov. Exhibit 37)

and then drove her to the bank to cash the forged loan checks. (Gov. Exhibits 33, 34, and

35) The two split the proceeds. (Transcript, Vol. I, pp. 95-100)

Timothy Davis of American General testified to the authenticity of Gov. Exhibits

33 through 37, and that American General engaged in interstate commerce and suffered a

total loss on the loan. (Transcript, Vol. IV, p. 542-46)

Based on the above, the Court finds that the Government proved beyond a

reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY**

**of Count 14.**

In **Count 15** of the Indictment, the Government claims that on or about November

8, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-

defendants, did knowingly make, utter and possess, and knowingly aid and abet the

making, uttering and possessing a forged security from Citi Financial in the amount of

$7,499.97, payable to Naomi Chamberlin, with the intent to deceive the organization,

thus affecting interstate commerce.

At trial, Elersic testified that Defendant provided her with Naomi Chamberlin's

stolen personal information, a credit report and bank statement. Defendant also provided

Elersic with a counterfeit driver's license and pay stub (Gov. Exhibit 39) containing Chamberlin's personal information so that Elersic could obtain a fraudulent loan.  That information was used when Elersic called Citi Financial in Akron, Ohio, on November 9, 2002, to obtain a fraudulent loan in the amount of $7,499.97.  Defendant was present when the call to Citi Financial was placed.  Additionally, Defendant drove Elersic to Citi Financial to sign the loan paper and then drove her to the National City bank to cash the forged loan check for $7,499.97.  (Gov. Exhibits 40 & 38 respectively)  Because Chamberlin had a business account at the bank, the check was deposited and then withdrawn from that account.  (Gov. Exhibits 41 & 43)  Elersic also cashed a forged check from that bank account in the amount of $3,499.97.  (Gov. Exhibit 44)  Elersic identified herself in the National City Bank surveillance photos conducting transactions on Chamberlin's bank account (Gov. Exhibit 42).  Elersic testified that she and the Defendant split the proceeds.  (Transcript, Vol. II, pp. 193-99)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 38 through 40, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 562)

Although the Indictment only charges Defendant with the forged security of $7,499.97, clearly the testimony and evidence presented shows that there were actually two forged checks, the loan check for $7,499.97 and the personal check for $3,499.97, for a total of $10,999.94.

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 15**.

In **Count 16** of the Indictment, the Government claims that on or about October 29, 2002, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $7,499.87, payable to Susan Duncan, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Kristine Schwab, Branch Manager for the Mayfield Heights, Ohio location of Citi Financial Loan Company, testified that Defendant, posing as a Susan Duncan, applied for a loan at Citi Financial.  In addition to the fraudulent loan papers, including a credit application (Gov. Exhibit 47), Disclosure Statement / Note and Security Agreement (Gov. Exhibit 48), self-employment information worksheet[8] (Gov. Exhibit 50), Defendant also submitted to the bank false income tax returns for 2000 and 2001 and fraudulent W-2 forms.  (Gov. Exhibits 51, 52, & 53)  While at Citi Financial, Defendant provided a fraudulent driver's license with Susan Duncan's name and a false address.[9]  (Gov. Exhibit 46).  The loan was approved and a check was issued in Susan Duncan's name for $7,499.87.  (Gov. Exhibit 45)  Defendant also signed up for insurance on the loan.  (Gov. Exhibit 49)  The Government also produced a picture of Defendant holding up the fraudulent loan check.  (Gov. Exhibit 55)  In addition to Schwab identifying Defendant as the person in the picture that presented herself as Susan Duncan, both Davie and Elersic identified Defendant as the individual in the photo.  Defendant forged the signature on the loan check (Gov. Exhibit 45) and took it to Checks Mart in Parma, Ohio on October 31, 2002.  At Checks Mart, Defendant filled-out a check cashing

---

[8] Kathy Davie testified that the handwriting on the Citi Financial self-employment information worksheet was Defendant's.

[9] Davie and Elersic positively identified the person on the driver's license of Susan Duncan as Defendant.

customer information sheet[10] (Gov. Exhibit 54) and cashed the check.  (Transcript, Vol. IV, pp. 515-23)

Schwab testified concerning the authenticity of Gov. Exhibits 45 through 53. Thomas Weber of Citi Financial testified that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 566)  Jillian McCreight authenticated Gov. Exhibits 54 and 55.

Based on the above, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 16.**

In **Count 21** of the Indictment, the Government claims that on or about April 28, 2004, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $15,000.11, payable to Robert P. Stuck, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Richard Taylor testified that Defendant provided him with Struck's stolen personal information, including a credit report (Gov. Exhibit 69) and a pay stub (Gov. Exhibit 70).  Defendant also provided Taylor with a counterfeit driver's license (Gov. Exhibit 74) and a note setting forth Stuck's address, Social Security number, date of birth, employment, and who he banks with.[11] (Gov. Exhibit 68) This information was used by Taylor to obtain a fraudulent loan.  Taylor called Citi Financial in Gahanna,

---

[10] Davie testified that the handwriting on the Checks Mart customer account application was Defendant's.
[11] During a search of Defendant's rental vehicle by the Twinsburg Police Department, the following items were found: original counterfeit Robert Stuck driver's license, fishing license, credit report, pay stubs; and personal identifier information of Stuck on a piece of paper identified as in Defendant's handwriting.

Ohio, on April 28, 2004, to obtain a fraudulent loan in the amount of $15,000.00.

Defendant was present when the call to Citi Financial was placed.  Additionally,

Defendant drove Taylor to Citi Financial to sign the loan paper and then drove her to

Huntington National Bank to cash the forged loan check for $15,000.11.  (Gov. Exhibits

75 & 74 respectively)  The teller at Huntington would not cash the check for the full

amount but issued Taylor $7,500.00 in cash and three cashier's checks for $2,500.00.[12]

Taylor and Defendant went to another branch of Huntington and received cash for the

cashier's checks.  Taylor testified that he and the Defendant split the proceeds.

(Transcript, Vol. VI, pp. 807-824)

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 73

through 75, that Citi Financial engaged in interstate commerce and suffered a total loss

on the loan.  (Transcript, Vol. IV, p. 563-64)

Based on the evidence presented, the Court finds that the Government proved

beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her

**GUILTY of Count 21**.

In **Count 22** of the Indictment, the Government claims that on or about May 21,

2004, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, with

other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet

the making, uttering and possessing a forged security from Citi Financial in the amount

of $15,000.06, payable to Joseph Farmer, with the intent to deceive the organization, thus

affecting interstate commerce.

At trial, Charles Griffin testified that Davie provided him all the instructions as to

how to perpetrate the frauds.  (Transcript, Vol. 5, p. 753-54)  He never received

---

[12] Taylor also got a fishing license in the name of Robert Stuck to aid in cashing the checks.

instructions from Defendant.  *Id.*   Griffin also stated that the fraudulent driver's license and pay stub were provided to him by Davie.  (Transcript, Vol. 5, pp. 761-62)  Griffin did admit to signing the loan documents, forging the cashed check, and splitting the proceeds, but made no connection to Defendant.  *Id.* at 762-65.

Based on the evidence presented, the Court finds that the Government failed to connect Defendant to this crime and thus has not proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a).  Therefore, the Court finds Defendant **NOT GUILTY of Count 22**.

In **Count 23** of the Indictment, the Government claims that on or about June 4, 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $7,499.88, payable to Melvin Peters, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Charles Griffin testified that Davie provided him all the instructions as to how to perpetrate the frauds.  *Id.* at 765-66.  He never received instructions from Defendant.  *Id.*   Griffin also stated that the fraudulent driver's license and pay stub were provided to him by Davie.  *Id.* at 767  Griffin did admit to signing the loan documents, forging the cashed check, and splitting the proceeds, but made no connection to Defendant.  *Id.* at 767-69.

Based on the evidence presented, the Court finds that the Government has not proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **NOT GUILTY of Count 23**.

25

In **Count 24** of the Indictment, the Government claims that on or about June 9, 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $15,000.11, payable to Wayne Dixon, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Charles Griffin testified that Davie provided him all the instructions as to how to perpetrate the frauds. *Id.* at 771-72. He never received instructions from Defendant. *Id.* Griffin also stated that the fraudulent driver's license and pay stub were provided to him by Davie. *Id.* at 772, 774-77. Griffin did admit to signing the loan documents, forging the cashed check, and splitting the proceeds, but made no connection to Defendant. *Id.* at 772-73.

Based on the evidence presented, the Court finds that the Government has not proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **NOT GUILTY of Count 24**.

In **Count 25** of the Indictment, the Government claims that on or about June 22, 2004, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $14,999.93, payable to Glenn Benson, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Charles Griffin testified that Cheryl Head provided him all the instructions as to how to perpetrate the frauds. *Id.* at 779. He never received instructions

from Defendant.  *Id.*  Griffin also stated that the fraudulent driver's license and pay stub were provided to him by Head.  *Id.* at 780.  Griffin did admit to signing the loan documents, forging the cashed check, and splitting the proceeds, but made no connection to Defendant.  *Id.* at 781-82.

Based on the evidence presented, the Court finds that the Government has not proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **NOT GUILTY of Count 25**.

In **Count 26** of the Indictment, the Government claims that on or about April 7, 2004, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing a forged security from Citi Financial in the amount of $15,000.01, payable to Darrell Lather, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Danny Waddell testified that Defendant provided him with Lather's stolen personal information, including a credit report, pay stubs, and a counterfeit driver's license (Gov. Exhibit 90)  This information was used by Waddell to obtain a fraudulent loan.  (Gov. Exhibit 91)  Waddell called Citi Financial in Toledo, Ohio, on April 7, 2004, to obtain a fraudulent loan in the amount of $15,000.01.  Davie was with him when the loan application was phoned in and the loan papers were signed.  Defendant and Davie drove Waddell back to Toledo the next day to cash the forged loan check for $15,000.01.  (Gov. Exhibits 91 & 89 respectively)  Waddell testified that he, Davie, and the Defendant split the proceeds in thirds.  (Transcript, Vol. VII, pp. 908-13).

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 89, 90, and 91, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan.  (Transcript, Vol. IV, p. 569)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 26**.

In **Count 27** of the Indictment, the Government claims that on or about March 18, 2004, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, did knowingly make, utter and possess, and knowingly aid and abet the making, uttering and possessing two forged securities from Citi Financial in the amount of $5,000.00 each, payable to James Guy, with the intent to deceive the organization, thus affecting interstate commerce.

At trial, Danny Waddell testified that Defendant provided him with Guy's stolen personal information, including a credit report, pay stubs, and a counterfeit driver's license (Gov. Exhibit 94)  Waddell called Citi Financial in Youngstown, Ohio, on March 18, 2004, to obtain a fraudulent loan in the amount of $10,000.00.  (Gov. Exhibit 95) Defendant was with him when the loan application was phoned in and the loan papers were signed.  Defendant and Davie drove Waddell back to Toledo the next day to cash the forged loan checks for $5,000.00 each, totaling $10,000.00.  (Gov. Exhibits 95, 92, & 93 respectively)  Waddell testified that he received one-third of the proceeds and Defendant and Davie received the remaining two-thirds.  (Transcript, Vol. VII, pp. 913-16).

Thomas Weber of Citi Financial testified to the authenticity of Gov. Exhibits 92 through 95, that Citi Financial engaged in interstate commerce and suffered a total loss on the loan. (Transcript, Vol. IV, p. 570-71)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(a) and thus finds her **GUILTY of Count 27**.

In **Count 28** of the Indictment, the Government claims that on or about January 18, 2004, in the Northern District of Ohio, Eastern Division, Defendant, with other co-defendants, knowingly and with the intent to defraud, effected transactions and aided and abetted the effecting of transactions with credit card accounts fraudulently opened at Costco, Best Buy and Wal-Mart in the name of Thomas Swartz, another person, to receive payment or any other thing of value during any one-year period, the aggregate value of which is equal to or greater than $1,000, to wit: merchandise, goods and services worth approximately $4,888.21, thus having an affect on interstate commerce in violation of 18 U.S.C. § 1029(a)(5) and (2).

Title 18 of United States Code, Section 1029(a)(5), entitled "Fraud and related activity in connection with access devices," makes it a crime against the United States to "knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000."

At trial, Danny Waddell testified that Defendant provided him with stolen personal identifier information of Thomas Swartz, including a credit report and a counterfeit driver's license. This information was used by Waddell to obtain a fraudulent

credit card in Swartz's name at Costco.  (Gov. Exhibit 96-credit application).  Waddell

used that credit card to purchase merchandise on January 17, 2004, totaling $1,706.36.

*Id.* (receipt for merchandise)  This merchandise was turned over to Defendant and Davie.

Waddell also used the provided information to open a credit account at Best Buy in

Swartz's name.  (Gov. Exhibit 97)  That account was used to purchase merchandise on

January 17, 2004, for $431.99 and $1608.36 totaling $2040.35, and on January 18, 2004,

totaling $787.29.   (Gov. Exhibit 98)  Although Waddell did keep one of the items for

himself, he turned the remainder over to Defendant and Davie.  Finally, Waddell used the

provided information to open a credit account with Wal-Mart in the name of Thomas

Swartz.  (Gov. Exhibit 99)  That credit card was used on January 17, 2004, to purchase

merchandise totaling $354.21.  Waddell kept some of the purchased items and gave the

remainder to Davie for her and Defendant.  (Transcript, Vol. 6, pp. 875-90)

   Based on the evidence presented, the Court finds that the Government proved

beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1029(a)(5) and thus finds

her **GUILTY of Count 28**.

   In order to find Defendant guilty on Counts 29 and 30, the Government must

prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1344.  That statute

provides in pertinent part,

   Whoever knowingly executes, or attempts to execute, a scheme or artifice-

   (1) to defraud a financial institution; or

   (2) to obtain any of the moneys, funds, credits, assets, securities, or other
   property owned by, or under the custody or control of, a financial
   institution, by means of false or fraudulent pretenses, representations, or
   promises . . .

has committed an offense against the United States of America.

In **Count 29** of the Indictment, the Government claims that the Defendant, along with other co-defendants, committed bank fraud by using personal identifier information and stolen or counterfeit identifications to open bank accounts for the purpose of cashing stolen, forged or counterfeit checks through those accounts.

During trial, Waddell testified that Defendant provided him with personal identifier information and counterfeit identification in the names of Thomas Swartz and Dan O'Brien.  (Transcript, Vol. 7, pp. 896-900)  These items were used to open bank accounts at Fifth Third Bank in January and February of 2004.  (Gov. Exhibits 101-103)  Waddell testified that he had seen Defendant prepare fraudulent checks on her home typewriter.  (Transcript, Vol. 6, pp. 890-91)  Defendant provided those checks, through Davie, to Waddell so that he could open accounts in fraudulent names and negotiate the checks.  *Id.* at 891 (Gov. Exhibit 103)  Waddell split the proceeds from the fraudulent checks with Davie.   (Transcript, Vol. 7, p. 898)

In addition to the above, during the April 30, 2004, the Twinsburg Police Department executed a search warrant at Defendant's Shaker Heights residence.  Among the things found at the home were stolen and counterfeit checks which were cut and placed in a garbage bag and the typewriter Waddell referred to that Defendant prepared the fraudulent checks on.  (Gov. Exhibit 232)

Gary Bellumoni authenticated the Fifth Third bank records, testified that Fifth Third Bank is insured by the FDIC, and that the bank suffered a total loss on the above accounts which totaled approximately $2,000.  (Transcript, Vol. 5, pp. 659-661)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1344 and thus finds her **GUILTY of Count 29**.

In **Count 30** of the Indictment, the Government claims that the Defendant, along with other co-defendants, committed bank fraud by using personal identifier information and stolen or counterfeit identifications to open bank accounts for the purpose of cashing stolen, forged or counterfeit checks through those accounts.

During trial, Jimmie Dunbar testified that Defendant and Davie provided him with personal identifier information of Anthony T. Jackson, such as Jackson's age, date of birth, Social Security number, address, and telephone number, and counterfeit identification in the name of Jackson.  (Transcript, Vol. 4, pp. 585-90)  These items were used to open bank accounts at Fifth Third Bank in Jackson's name.  (Gov. Exhibits 104-106, 108)  Dunbar also opened an account in his own name so that he could deposit fraudulent checks, supplied by Defendant, into that account to split the proceeds with Defendant and Davie.  (Transcript, Vol. 4, pp. 583-613)  Fraudulent checks were also used to purchase merchandise which was taken to Defendant's home.  *Id.* at 590-95.

In addition to the above, during the April 30, 2004, the Twinsburg Police Department executed a search warrant at Defendant's Shaker Heights residence.  Among the things found at the home were torn stolen and counterfeit checks .  (Gov. Exhibits 224, 26-230, 232).  Also found at the home were the stolen driver's license of Jackson (Gov. Exhibit 312) and of Jacqueline Nemmeth (Gov. Exhibit 310).

Gary Bellumoni authenticated the Fifth Third bank records, testified that Fifth Third Bank is insured by the FDIC, and that the bank suffered a total loss on the above accounts which totaled approximately $1,300.  (Transcript, Vol. 5, pp. 657-663)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1344 and thus finds her **GUILTY of Count 30**.

In order to find Defendant guilty on Count 31, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(7).  That statute provides in pertinent part,

(a) Whoever, in a circumstance described in subsection (c) of this section-

(7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law;  . . .

commits an offense against the United States of America.

In **Count 31** of the Indictment, the Government claims that on or about September 10, 2002, and August 13, 2004, in the Northern District of Ohio, Eastern Division, Defendant along with other co-defendants, did knowingly transfer or use, and knowingly aid and abet the transfer and use, without lawful authority, a means of identification of one or more persons with the intent to commit, or aid and abet, or in connection with, any unlawful activity that constitutes a violation of federal law, or constitutes a felony under State or local law, thus affecting interstate commerce in violation of 18 U.S.C. § 1028 (a)(7).

In the above previous pages, the Court has discussed the multitude of instances where Defendant provided to others personal identifiers of various individuals in order to fraudulently deprive financial institutions and retail stores of funds and merchandise, which are felony offenses under state law and violations of federal law.  In addition, Defendant also had possession of fraudulent driver's licenses which contained Defendant's photo and the personal identifier information of others, including Susan Duncan and Betty Kolar.  (Gov. Exhibits 46, 54-55, & 62-63)  There was also testimony that Defendant used a fraudulent driver's license in the name of Robin James to lease an apartment in the Watergate Apartments in June of 2004.  (Transcript, Vol. 5, p. 707)  Stolen and counterfeit driver's licenses and identification cards were also found in the search of that residence.  (Gov. Exhibits 256-258 and 310-312)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(7)  and thus finds her **GUILTY of Count 31**.

In **Count 32** of the Indictment, the Government claims that on or about March 20, 2003, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, did knowingly produce, transfer or possess, and aid and abet the production, transfer or possession, of a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement which will be so used, thus affecting interstate commerce in violation of 18 U.S.C. § 1028(a)(5).

In order to find Defendant guilty on Count 32, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(5). That statute provides in pertinent part,

(a) Whoever, in a circumstance described in subsection (c) of this section-

(5) knowingly produces, transfers, or possesses a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement or authentication feature which will be so used;

has committed an offense against the United States.

When the search warrant was executed at Defendant's Shaker Heights home on March 20, 2003, the following items were found that had been used to make fraudulent identification documents: Gov. Exhibits 111 - Packard Bell computer; 112 - Hewlet Packard Laptop; 117 - Anthony Evan's Social Security card; 121 - Wendy Smith's Social Security benefits statement addressed to a non-existing address on the same road as Defendant's residence; and 122 - Defendant's handwritten personal identifier information of Jean Stutzman. In addition to these exhibits, other papers, written by Defendant, contained various victims' identifier information, including Gov. Exhibits 120, 122-123, 126, 150, 159, 161-166, 168, and 181-182. Social Security cards or statements were also discovered for individuals who were either victims or claimed dependants on fraudulent tax returns (which will be discussed below), including: Gov. Exhibits 136, 142, 168, 193, and 205. Finally, copies of cemetery contracts which provided the names, addresses and Social Security numbers of individual victims (Gov. Exhibit 129), a tampered copy of a DD-214 military separation document (Gov. Exhibit 130) along with blank copies of that

document (Gov. Exhibit 131), and stolen checkbooks (Gov. Exhibit 141) and birth certificates (Gov. Exhibit 177), were also found.

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(5)  and thus finds her **GUILTY of Count 32**.

In order to find Defendant guilty on Counts 33 and 34, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(b).  That statute provides in pertinent part,

> (b) Whoever makes, receives, possesses, sells or otherwise transfers an implement designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used

has committed an offense against the United States.

In **Count 33** of the Indictment, the Government claims that on or about April 30, 2004, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, did knowingly make, receive, possess, sell, or otherwise transfer, and knowingly aid and abet the making, receipt, possession, sale or other transfer of one or more implements designed for or particularly suited for making counterfeit or forged securities with the intent that they be so used, thus affecting interstate commerce in violation of 18 U.S.C. § 513(b) and 2.

When the search warrant was executed at Defendant's Shaker Heights home on March 20, 2003, the following items were found that had been used to make fraudulent identification documents: Gov. Exhibits 208 - computer; 209 - counterfeit driver's license and identification cards with Waddell's photo; 210 - fraudulent identification cards in names used by Waddell; 211-212 - personal identifier information and credit report of

36

James Guy; 213-217 credit reports for other individuals; and 218-220 - personal identifier information for other individuals including a steno book with dependent identifier information used on fraudulent tax returns.  Defendant is clearly tied to the Chelton Road residence and hence the exhibits above through the photos taken during the search, such as Defendant's diplomas on the wall and prescription bottles in the bathroom.  (Gov. Exhibits 56-61 and 208-240)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(b) and thus finds her **GUILTY of Count 33**.

In **Count 34** of the Indictment, the Government claims that on or about April 13, 2004, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, did knowingly make, receive, possess, sell, or otherwise transfer, and knowingly aid and abet the making, receipt, possession, sale or other transfer of one or more implements designed for or particularly suited for making counterfeit or forged securities with the intent that they be so used, thus affecting interstate commerce in violation of 18 U.S.C. § 513(b) and 2.

As stated previously, Defendant rented an apartment at the Watergate Apartments between June of 2004 and August of 2004 in the name of Robin James, without her knowledge.  On August 13, 2004, the Secret Service executed a search warrant of that residence.  Items confiscated during the search included Ohio Bureau of Motor Vehicles hologram film (Gov. Exhibit 302).  The additional items recovered include Gov. Exhibits 245A-315.

James testified that she did not rent that apartment and did not find out about the fact that an apartment was leased in her name until Defendant contacted her at 1:30 p.m. on August 13, 2004, to inform her that a search warrant was being executed. Additionally, Maisha Conard identified Defendant as the person who rented that particular apartment using the name and personal identifiers of James, who is the niece of Davie. (Transcript, Vol. 5, 707-42)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 513(b) and thus finds her **GUILTY of Count 34**.

In order to find Defendant guilty on Count 35, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(5).  That statute was discussed in Count 32 above.

In **Count 35** of the Indictment, the Government claims that on or about August 13, 2004, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, did knowingly transfer or possess, and aid and abet the production, transfer or possession of a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement which will so be used, thus affecting interstate commerce in violation of 18 U.S.C. § 1028(a)(5) and 2.

When the search warrant was executed on August 13, 2004, the following items were found that had been used to make fraudulent identification documents: Gov. Exhibits 245(A) - Toshiba Laptop computer; 245(B) - Dell 340 CPU; 246 - Sony Handy

Cam; 247 - HP Photo Smart camera; 248 - HP Photo Smart printer; 249 - Polaroid Pocket ID kit; 250 - JVC digital video camera; 253, 254, and 263 - passport photos; 255-262, 264-266, 273, 279-281, 285, 291-292, and 298-315 - stolen or counterfeit identification cards driver's licenses, and assorted personal identifier information for various individual victims; 267-268, 274-277, 284, and 286-290 - credit reports and other credit history information on various individuals; 301- laminating pouch assortment used to make identification cards; and 302 - Ohio Bureau of Motor Vehicles laminate film.  See also the photos from the search of Apartment 1150 - Gov. Exhibits 316-322.

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028(a)(5) and thus finds her **GUILTY of Count 35**.

**Count 36** of the Indictment charges that beginning in or about March 2001, and continuing until in or about February 2003, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, unlawfully, willfully and knowingly agreed, combined and conspired with each other to defraud the United States by obtaining or aiding to obtain the payment or allowance of false, fictitious or fraudulent claims in violation of 18 U.S.C. § 286.

In order to find Defendant guilty on Count 36, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 286.  That statute provides in pertinent part:

> Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, [has committed an offense against the United States].

At trial, Kathie Davie testified that Defendant was directly involved with her in preparing and electronically filing false tax returns.  (Transcript, Vol. 2, pp. 289-300)  Davie also testified that persons were paid to use their children's names and personal identifier information on others tax forms in order to increase the amount of the refund on the false returns.  *Id.* at 293-94.  Additionally, Davie stated that the computers used to prepare the tax forms belonged to Defendant.  *Id.* at 299.  She identified Defendant's handwriting on the "steno book" which contained information from the false returns, including names, dates of birth, Social Security numbers and information on the dependants falsely claimed on numerous false returns.  (Gov. Exhibit 220)  Davie also identified that a chart used by Defendant describing refunds claimed, refund amounts due and "profit", split between her and Defendant, from various false 2002 tax returns was in Defendant's handwriting.  As were a multitude of other items pertaining to taxpayers names used on 2000 and 2001 returns.  (Gov. Exhibit 181)

The IRS investigated the returns at issue in this case and verified that most of the employment information listed on the returns was false.  (Gov. Exhibits 381-421)  Special Agent Gwendolyn Curtis of the IRS investigated the returns at issue in Counts 36 through 60.  She discovered that many of the individuals were not aware that returns had been filed in their names.  (Transcript, Vol. 8, p. 1339)  Three of the individuals, Sheree Allen, Twila Nauden, and Michael Allen, were aware that returns had been filed but did not recognize the information reported on them.  *Id.*  Agent Curtis also discovered that of the 24 returns at issue, there were wage amounts, withholding amounts and dependants that were similar.  *Id.* at 1342.  Of the 24 returns, 14 received refunds.  *Id.*  As will be discussed in more detail below, the refunds from the false returns were mostly directed to

40

bank accounts controlled by Defendant or Kathy Davie.  Defendant actually endorsed and negotiated the refund check from Curtis Birt's 2000 tax return.  (Gov. Exhibit 455)

Wendy Calliens testified at trial that when she confronted Defendant about the false tax return Defendant filed for 2001, Defendant admitted using Calliens' information to file the return.  (Transcript, Vol. 7, pp. 1051-52)

During the March 2003 search of Defendant's residence, the police discovered a multitude of personal identifier information for the false returns.  (Gov. Exhibit 508) During the April 2004 search, a "steno book" was discovered which contains names, Social Security numbers, and dates of birth for dependants named on the false returns. (Gov. Exhibit 220)  A legal pad was also found which contained names on the false returns for 2002 along with a detailed breakdown of the refunds due, amounts payable, and "profit" to be received.  (Gov. Exhibit 181)

Finally, Gov. Exhibit 509 details the false returns and similarities between the returns.

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 286 and thus finds her **GUILTY of Count 36**.

In order to find Defendant guilty on Counts 37 - 60, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287.  That statute provides in pertinent part:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent [has committed an offense against the United States.]

In Counts 37 through 60 of the Indictment, the Government claims that on or about March 19, 2001 through February 18, 2003, in the Northern District of Ohio, Eastern Division, Defendant along with another co-defendant, did knowingly make and present, caused to be made and presented, and knowingly aided and abetted the making and presentation, to the Internal Revenue Service, an agency of the Department of the Treasury, claims against the United States for payment, which she knew to be false, fictitious or fraudulent, by preparing and causing to be prepared, and filing, and causing to be filed, what purported to be federal income tax returns, for various individuals, wherein claims for income tax refunds for various amounts were made, knowing such claims to false, fictitious or fraudulent, in violation of 18 U.S.C. § 287.

Page 33 of the Indictment lists the count charged, name on the claim with the IRS, date of claim, tax year for the fraudulent return, and amount claimed for a refund on the return and therefore will not be restated herein.

In **Count 37**, a federal tax return was electronically filed for tax year 2000 using the name and personal identifiers of Eric Cammon.  (Gov. Exhibit 333)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 381-82)

During the March 2003 search of Defendant's residence, the police discovered W-2 information for Cammon in Defendant's handwriting (Gov. Exhibit 151), a copy of the tax return (Gov. Exhibit 137), information used on the return (Gov. Exhibit 153), and Cammon's name on a list in Defendant's handwriting (Gov. Exhibit 168).

During the April 2004 search of Defendant's residence, a steno book was found which contained information pertaining to the dependents listed on Cammon's return.

(Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Fenetre, Inc. at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 473-74, & 451)  Additionally, Davie identified Defendant's handwriting on the signature form, Form 8453, of Cammon.   (Gov. Exhibit 333, p. 7)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287 and thus finds her **GUILTY of Count 37**.

In **Count 38**, a federal tax return was electronically filed for tax year 2000 using the name and personal identifiers of Joseph Richardson  (Gov. Exhibit 334)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 383-84)  Additionally, Richardson testified that he was not employed during the year 2000 due to medical problems and did not file a tax form for that year.  (Transcript, Vol. 7, pp. 1103-1104)

The wage information on Richardson's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Birt 2001, Davie 2001, Dohn Bradley 2001, Dion Bradley 2001, Calliens 2001, Chappell 2001, Davie 2002, and Hollis 2002.

During the March 2003 search of Defendant's residence, the police discovered employer information used on the return (Gov. Exhibit 140) and Richardson's name on a list in Defendant's handwriting (Gov. Exhibit 164).

The refund on this return was directed to and deposited into an account in Defendant's name at National City Bank.  (Gov. Exhibits 453 & 475 The only signatory on the account was Defendant.  (Gov. Exhibit 474)  Additionally, Davie identified Defendant's handwriting on the signature form, Form 8453, of Richardson.   (Gov. Exhibit 333, p. 7)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287  and thus finds her **GUILTY of Count 38**.

In **Count 39**, a federal tax return was electronically filed for tax year 2000 using the name and personal identifiers of Curtis Birt.  (Gov. Exhibit 335)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 385-86) It is additionally noted that the address on the return in this case is similar to that used on other returns.  (Gov. Exhibit 333, 339, 343)

During the March 2003 search of Defendant's residence, the police discovered information on the dependents claimed on the return (Gov. Exhibit 126), a copy of the tax return (Gov. Exhibit 138), information used on the return (Gov. Exhibit 139), and Birt's name on a list in Defendant's handwriting (Gov. Exhibit 164).

During the April 2004 search of Defendant's residence, a steno book was found which contained information pertaining to the dependents listed on Birt's return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was given in paper check form and was endorsed by Defendant.  (Gov. Exhibits 455)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287  and thus finds her **GUILTY of Count 39**.

In **Count 40**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Ronald Maxwell.  (Gov. Exhibit 336)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 387-88)

The wage information on Maxwell's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Mitchell 2001, Richardson 2001, Cammon 2001, Nauden 2001, and Richardson 2002.

During the March 2003 search of Defendant's residence, the police discovered Maxwell's name on a list written by Defendant (Gov. Exhibit 164), identifiers for the dependents listed on this return written in Defendant's handwriting (Gov. Exhibit 164), and Maxwell's name on a list of returns, refunds and profit. (Gov. Exhibit 181).

During the April 2004 search of Defendant's residence, a steno book was found which contained references to Maxwell and the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was written in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Fenetre, Inc. at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 472-473, 456)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 40**.

In **Count 41**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Marlon E. Mitchell.  (Gov. Exhibit 337)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 389-90)

The wage information on Mitchell's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Maxwell 2001, Richardson 2001, Cammon 2001, Nauden 2001, and Richardson 2002.

During the March 2003 search of Defendant's residence, the police discovered Mitchell's identifiers in Defendant's handwriting (Gov. Exhibit 161), identifiers for the dependents listed on this return written in Defendant's handwriting (Gov. Exhibit 164), Earned Income Credit form for Mitchell in Defendant's handwriting (Gov. Exhibit 194), and information regarding Mitchell's 2001 return in Defendant's handwriting. (Gov. Exhibit 194).

During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220) Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of IJN/JUMP Foundation at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 476)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 41**.

In **Count 42**, Defendant filled-out a federal tax return and electronically filed it for tax year 2001 under the name of Sheree A. Allen.  (Gov. Exhibit 338)  Allen testified that Davie approached her about getting her tax returns for 2001 and 2002 prepared.  (Transcript, Vol. 7, pp. 1118-19)  Davie stated that Defendant would be preparing the returns.  *Id.*  Allen provided Davie with her W-2's for those years, her Social Security number, daughter's Social Security number and birth date.  *Id.* at 1120, 1128.  Allen testified that she did not sign the returns and given a return from Davie of $1,800 when the actual refund claimed was $4,982.  *Id.* at 1121, 1125.  Upon review of the filed return, Allen noted that one of the dependants listed was false and one of the employers was false.  *Id.* at 1123-24.

During the March 2003 search of Defendant's residence, the police discovered a printout of the state return filed on behalf of Allen (Gov. Exhibit 147) and dependent information for the return written in Defendant's handwriting (Gov. Exhibit 164).

During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of IJN/JUMP Foundation at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 476-77)

It is additionally noted that Allen received a letter from Defendant after she had been interviewed by the IRS.  (Gov. Exhibit 449)  That letter indicates Defendant's knowledge of the discrepancy between the amount claimed on the 2001 return and the amount given to Allen.

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 42**.

In **Count 43**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Curtis Birt.  (Gov. Exhibit 339)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 392-93)

The wage information on Birt's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Richardson 2000, Davie 2001, Dohn Bradley 2001, Dion Bradley 2001, Calliens 2001, Chappell 2001, Davie 2002, and Hollis 2002.  Additionally, the address listed on the return is similar to other returns at issue in this case.

During the March 2003 search of Defendant's residence, the police discovered Birt's name on a list in Defendant's handwriting (Gov. Exhibit 164).  During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Rochelle Enterprises LLP at Fifth Third Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 482)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 43**.

In **Count 44**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Cheryl Head.  (Gov. Exhibit 340)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 394-95)  According to the tax return filed by Defendant for Head, her wages totaled $12,751.00 and withholding credits amounted to $448.00; however, IRS records indicate that Head actually received an income of $5,601.00 for the year of 2001 and had withholding credits of only $145.00. (Gov. Exhibit 395)

During the March 2003 search of Defendant's residence, the police discovered copies of Head's fraudulent state and municipal tax returns for 2001 (Gov. Exhibit 145) and identifiers for the dependents listed on this return written in Defendant's handwriting (Gov. Exhibit 164).

During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220) Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Fenetre, Inc. at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 460, 472-473)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 44**.

49

In **Count 45**, a federal tax return was electronically filed for tax year 2001 for Kathie Davie.  (Gov. Exhibit 341)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 396-97)

The wage information on Davie's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Richardson 2000, Birt 2001, Dohn Bradley 2001, Dion Bradley 2001, Calliens 2001, Chappell 2001, Davie 2002, and Hollis 2002.

During the March 2003 search of Defendant's residence, the police discovered Davie's Social Security number and account information where the refund was directed in Defendant's handwriting.   (Gov. Exhibits 120 & 145)  Copies of Davie's 2001 state tax return, and 2001 Earned Income Credit schedule from her federal tax return were also found.  (Gov. Exhibit 199)

The refund on this return was directed to and deposited into an account in Kathie Davie's personal account at Fifth Third Bank.  (Gov. Exhibits 462 & 485-487)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 45**.

In **Count 46**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Joey Richardson.  (Gov. Exhibit 342)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 398-99)  Additionally, Richardson testified that the information given on the return was incorrect.

The wage information on Richardson's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Maxwell 2001, Mitchell 2001, Cammon 2001, Nauden 2001, and Richardson 2002.

During the March 2003 search of Defendant's residence, the police discovered Mitchell's name on a handwritten list in Defendant's handwriting (Gov. Exhibit 164). During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of IJN/JUMP Foundation at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 476)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 46**.

In **Count 47**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Eric Cammon.  (Gov. Exhibit 343)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 400-401)

During the March 2003 search of Defendant's residence, the police discovered a printout of Cammon's fraudulent Earned Income Credit schedule (Gov. Exhibit 153) and Cammon's name on a handwritten list in Defendant's handwriting (Gov. Exhibit 164). During the April 2004 search of Defendant's residence, a steno book was found which

contained references to the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Fenetre, Inc. at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 452 & 472)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 47**.

In **Count 48**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Dohn Bradley.  (Gov. Exhibit 344)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 402-403)

The wage information on Bradley's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Richardson 2000, Birt 2001, Davie 2001, Dion Bradley 2001, Calliens 2001, Chappell 2001, Davie 2002, and Hollis 2002.

During the April 2004 search of Defendant's residence, a steno book was found which contained references to the dependents claimed on the return.  (Gov. Exhibit 220) Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of IJN/JUMP Foundation at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 464, 476-77)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 48**.

In **Count 49**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Twila Nauden.  (Gov. Exhibit 345)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 404-405)  Additionally, Nauden testified that the information given on the return was incorrect.  (Transcript, Vol. 7, pp. 1077-79)  Nauden also testified that the information regarding dependants on this return was false due to the fact that she has no children or other dependents.  *Id.* at 1071.

Nauden testified that she was familiar with Defendant through Defendant's daughter, Cleo.  *Id.* at 1072.  Cleo told Nauden that her mother did taxes and would do Nauden's return free of charge.  *Id.*  Nauden provided Defendant with her W-2 forms for 2001 so that Defendant could fill-out her tax forms.  *Id.* at 1074.  Nauden never saw a copy of the forms and never received a refund from the IRS.  *Id.* at 1075.  Defendant went so far as to enter into a three-way call with Nauden and the IRS to inquire about Nauden's refund.  *Id.* at 1075-76.

The wage information on Nauden's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Maxwell 2001, Mitchell 2001, Richardson 2001, Cammon 2001, and Richardson 2002.

During the March 2003 search of Defendant's residence, the police discovered the original W-2 forms given by Nauden to Defendant.  (Gov. Exhibit 152)  Additionally, during the April 2004 search of Defendant's residence, a steno book was found which

contained references to the dependents claimed on the return.  (Gov. Exhibit 220)  Davie testified that the information written in this book was in Defendant's handwriting.

The refund on this return was directed to and deposited into an account in the name of Fenetre, Inc. at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 345 & 472)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 49**.

In **Count 50**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Dion Bradley.  (Gov. Exhibit 346)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 406-407)  Additionally, Bradley testified that he did not file a tax return for the year 2001.  (Transcript, Vol. 7, p. 1061)  Bradley also testified that the dependants named on the return were incorrect.  (Transcript, Vol. 7, p. 1063)

The wage information on Bradley's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Richardson 2000, Birt 2001, Davie 2001, Dohn Bradley 2001, Calliens 2001, Chappell 2001, Davie 2002, and Hollis 2002.

During the March 2003 search of Defendant's residence, the police discovered Bradley's name and personal identifiers on a list in Defendant's handwriting (Gov. Exhibit 196) and printouts of Bradley's fraudulent Earned Income Credit form.

The refund on this return was directed to and deposited into an account in the name of Rochelle Enterprises at Fifth Third Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 465 & 483-84)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 50**.

In **Count 51**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Wendy Calliens.  (Gov. Exhibit 347)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 408-09)  Additionally, Calliens testified that she has never filed a tax return. (Transcript, Vol. 7, p. 1047)  She also testified that she did not work for the employers reported on the return for 2001.  (Transcript, Vol. 7, pp. 1049-50)   Finally, Calliens testified that while in the Ohio Reformatory for Women, she met up with Defendant, who confessed that she had filed a tax return for Calliens, unbeknownst to her.  (Transcript, Vol. 7, pp. 1051-52)

The wage information on Calliens' tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Richardson 2000, Birt 2001, Davie 2001, Dohn Bradley 2001, Dion Bradley 2001, Chappell 2001, Davie 2002, and Hollis 2002.

During the March 2003 search of Defendant's residence, the police discovered a printout of filing instructions for Calliens' 2001 return (Gov. Exhibit 158) and Calliens' taxpayer identifier and that of the dependants claimed on the 2001 return, notes from the return of information needed in Defendant's handwriting (Gov. Exhibit 159).  During the

April 2004 search of Defendant's residence, an address book, which contained Calliens'

name was found made out in Defendant's handwriting.  (Gov. Exhibit 221)

The refund on this return was directed to an account in the name of Rochelle

Enterprises at Fifth Third Bank.   The only signatory on the account was Defendant.

(Gov. Exhibits 347, 466 & 482)

Based on the evidence presented, the Court finds that the Government proved

beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her

**GUILTY of Count 51**.

In **Count 52**, a federal tax return was electronically filed for tax year 2001 using

the name and personal identifiers of Kenneth Chappell.  (Gov. Exhibit 348)  The IRS

determined that the employer information contained on the return was false.  (Gov.

Exhibits 410-1)  Additionally, Chappell testified that he had not worked for

approximately 20 years.  (Transcript, Vol. 7, p. 1028)

The wage information on Chappell's tax return and the withholding amounts

therein are strikingly similar to other tax returns in this case, including Richardson 2000,

Birt 2001, Davie 2001, Dohn Bradley 2001, Dion Bradley 2001, Calliens 2001, Davie

2002, and Hollis 2002.

During the March 2003 search of Defendant's residence, the police discovered a

printout of the electronic filing instructions for Chappell's 2001 filed tax return (Gov.

Exhibit 158), Chappell's personal identifiers in Defendant's handwriting (Gov. Exhibit

159), and printouts of electronic filing acknowledgement and the Earned Income Credit

form in Defendant's handwriting.  (Gov. Exhibit 170)

The refund on this return was directed to and deposited into an account in the name of IJN/JUMP Foundation at National City Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 348, 467, & 476)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 52**.

In **Count 53**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Donna Curry.  (Gov. Exhibit 349)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 412-13)  Additionally, Curry testified that she had not filed a tax return since she was 18, and she is now 39, and had not worked in years.  (Transcript, Vol. 7, pp. 1036 & 1039)  Curry also testified that although the return showed that she had a dependant named James, she had no sons, only daughters.  *Id.* at 1039.

The wage information on Curry's tax return and the withholding amounts therein are strikingly similar to another tax return in this case, Wendy Smith Stevens for 2001.

During the March 2003 search of Defendant's residence, the police discovered a correspondence from the IRS regarding Curry's return addressed to Donna Curry at 3512 Chelton Road, Shaker Heights, Ohio, an address that is non-existent.  (Gov. Exhibits 192 & 489)  Additionally, during the April 2004 search of Defendant's residence, the police discovered the information regarding the claimed dependants on Curry's return in Defendant's handwriting (Gov. Exhibit 220).

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 53**.

In **Count 54**, a federal tax return was electronically filed for tax year 2001 using the name and personal identifiers of Wendy Smith-Stevens.  (Gov. Exhibit 350)  The IRS determined that the wage and withholding information contained on the return was false.  (Gov. Exhibit 414)  Additionally, Smith-Stevens testified that she had not worked during the year of 2001 and had not filed a federal income tax return for 2001.  On the false tax return was also a claim that Smith had received just over $10,000 in rental income which Smith Stevens testified she never received. (Transcript, Vol. 7, p. 1020-23)

The wage information on Smith's tax return and the withholding amounts therein are strikingly similar to another tax return in this case, Curry 2001.  (Gov. Exhibit 349)

During the March 2003 search of Defendant's residence, the police discovered a benefits statement from the Social Security Administration, including Smith-Steven's Social Security Number, addressed to Smith at 3512 Chelton Road, a non-existent address (Gov. Exhibit 121) and Smith-Steven's name and amount of the refund claimed on the false return in  Defendant's handwriting.  (Gov. Exhibit 171)

The refund on this return was directed to and deposited into an account in the name of Rochelle Enterprises at Fifth Third Bank.   The only signatory on the account was Defendant.  (Gov. Exhibits 349-50, 469, & 482)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 54**.

In **Count 55**, a federal tax return was electronically filed for Kathy Davie for the tax year 2002.  (Gov. Exhibit 351)  Davie testified that the dependents and the income claimed on the return were false.  (Transcript, Vol. 3, p. 433)  Additionally, the IRS verified that the wage and withholding information was false.  (Gov. Exhibits 415 & 416)  Davie also testified that Defendant prepared the tax return and signed Davie's name at the bottom of the return.  (Transcript, Vol. 3, pp. 433-34).

The wage information on Davie's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Cammon 2000, Birt 2001, Davie 2001, Dohn Bradley 2001, Dion Bradley 2001, Calliens 2001, Chappell 2001, and Richardson 2002.

During the March 2003 search of Defendant's residence, the police discovered information from the 2002 return, including the refund, amount owed to taxpayer, and "profit", all in Defendant's handwriting.  (Gov. Exhibit 181)  The police also found information regarding the return in Defendant's handwriting, including Davie's Social Security number and the bank account the refund was to be directed to and printouts of the documents relating to the return (Gov. Exhibits 187 & 199)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 55**.

In **Count 56**, a federal tax return was electronically filed for tax year 2002 using the name and personal identifiers of Cheryl Head.  (Gov. Exhibit 352)  The IRS determined that the employer information contained on the return was false.  (Gov. Exhibits 417 & 418)

During the March 2003 search of Defendant's residence, the police discovered printouts of documents related to Head's 2002 electronically filed tax return with handwritten information and bank account information (Gov. Exhibit 200), other handwritten information regarding the false return, including Head's name, amount of refund claimed, amount due to taxpayer, and amount of "profit"(Gov. Exhibit 181), and handwritten identifier information for the dependants claimed on the false return (Gov. Exhibit 164).  During the April 2004 search of Defendant's Chelton Road address, the police discovered the "steno book" which contained identifier information on the dependants claimed on this return.  (Gov. Exhibit 220)  Davie testified that the above documents were all in Defendant's handwriting.

The refund on this return was directed to an account at National City Bank in the name of Turp's Megabyte Café.  The only signatory on the account was Defendant. (Gov. Exhibits 352, 461, & 478)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 56**.

In **Count 57,** a federal tax return was filed for the year 2002 using the name and personal identifiers of Andrew Hollis, III.  Hollis testified that he did not file a 2002 tax return.  (Transcript, Vol. 8, p. 1159)  Upon review of the filed return, Hollis testified that all the information on the return was correct except the wages earned and the return requested.  *Id.* at 1161.

The wage and withholding amounts are similar to other tax returns in issue, including Richardson 2000, Birt 2001, Davie 2001, Dohn Bradley 2001, Dion Bradley

2001, Calliens 2001, Chappell 2001, and Davie 2002.  Additionally, Hollis testified that he gave his personal identification information and that of his children to his girlfriend, Judy Elersic, first for the purpose of filing a return and later testifying that it was for others to use his dependents.  *Id.* at 1158, 1162.  Hollis stated that he did receive money from Elersic for the return in the amount of $1,600 when he thought the amount was to be $3,000.  *Id.* at 1163.

The Court notes that Hollis testified that he never had a conversation with Defendant about the return and only received money from Elersic.  *Id.* at 1163.  Additionally, the Court did not find Hollis to be a credible witness.  Even though his passport photos were found in Defendant's home, he stated that they were taken for the purpose of a vacation in Jamaica.  *Id.* at 1164.  Hollis also provided his personal information for the purpose of preparing a federal tax return even though, through his own testimony, he had not worked in 2002 and indicated that he had not worked for a number of years.  *Id.* at 1157-58.

Based on the above, the Court does not find that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287 for this Count, and thus finds her **NOT GUILTY of Count 57**.

In **Count 58**, a federal tax return was electronically filed for tax year 2002 using the name and personal identifiers of Joey M. Richardson.  (Gov. Exhibit 354)  The IRS determined that the wage and withholding information contained on the return were false.  (Gov. Exhibits 421 & 422)  Additionally, Richardson testified that he has never filed a federal tax return, that the employers and wages listed are false, and that the dependants listed on the return are false.  (Transcript, Vol. 7, p. 1105)

The wage information on Richardson's tax return and the withholding amounts therein are strikingly similar to other tax returns in this case, including Maxwell 2001, Mitchell 2001, Richardson 2001, Cammon 2001 and Nauden 2001.

During the March 2003 search of Defendant's residence, the police discovered printouts of documents relating to the false return (Gov. Exhibit 197), printouts of refund requests and inquiries to the IRS regarding this return (Gov. Exhibit 195), Richardson's name on a list in Defendant's handwriting (Gov. Exhibit 164), information relating to the return in Defendant's handwriting, including Richardson's name, amount of refund per return, amount owed "for kids", and amount of "profit." (Gov. Exhibit 181)  The police also found other information in Defendant's handwriting that listed Richardson's name, Social Security number, refund claimed, and account that the refund had been directed to (Gov. Exhibit 187).  The refund on this return was directed to an account in the name of Davie Tax Service at Key Bank.   The only signatory on the account was Davie.  (Gov. Exhibits 354, 454, & 479)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 58**.

In **Count 59**, a federal tax return was electronically filed for tax year 2002 using the name and personal identifiers of Sheree A. Allen.  (Gov. Exhibit 355)  The IRS determined that the wage and withholding information contained on the return was false. (Gov. Exhibit 423)  Allen testified that Defendant prepared her federal tax returns for the years 2001 and 2002.  (Transcript, Vol. 7, pp. 1118-19)  Allen never received a copy of the prepared returns.  *Id.* at 1120.   Additionally, one of the individuals listed as a

dependant was not one of Allen's valid dependants. *Id.* at 1126. The Government also presented a letter from Defendant to Allen regarding her statements. (Gov. Exhibit 449) This letter demonstrates Defendant's awareness of the falsely filed return and refund.

During the March 2003 search of Defendant's residence, the police discovered Allen's June 19, 2002 pay check and earning statement (Gov. Exhibit 119), information written in Defendant's handwriting regarding the false dependant (Gov. Exhibit 162), information regarding Allen's 2002 return in Defendant's handwriting (Gov. Exhibit 181), a printout of the electronically filed return for Allen for 2002 (Gov. Exhibit 198), and reference numbers and phone number of the Internet website refund inquiry dated February 20, 2003 regarding Allen's return (Gov. Exhibit 199). During the April 2004 search of Defendant's Chelton Road residence, police also found the "steno book" containing information for the false dependant from Allen's 2002 return in Defendant's handwriting. (Gov. Exhibit 220)

The refund on this return was directed to a Key Bank account in the name of Davie Tax Service. (Gov. Exhibits 355, 459, & 479) Although Allen was given a refund for her return from Davie, it was only for $1,300 when the actual refund was $5,180, which Allen later received from the IRS. (Gov. Exhibit 355) (Transcript, Vol. 7, pp. 1121 & 1127)

Based on the evidence presented, the Court finds that the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her **GUILTY of Count 59**.

In **Count 60**, a federal tax return was electronically filed for tax year 2002 using the name and personal identifiers of Michael Allen. (Gov. Exhibit 356) The IRS

determined that the wage and withholding information contained on the return was false.
(Gov. Exhibits 424)  The dependants named on the return were the same as those named
on Curtis Birt's return for 2001.  (Gov. Exhibit 339)

During the March 2003 search of Defendant's residence, the police discovered a
W-2 forms in Michael Allen's name for 2002 (Gov. Exhibits 143 & 144)  During the
April 2004 search of Defendant's residence, the police discovered the "steno book" with
references to dependants claimed on the return in Defendant's handwriting.  (Gov.
Exhibit 220)

The refund on this return was directed to and deposited into an account in the
name of Davie Tax Service at Key Bank.   The only signatory on the account was Davie.
(Gov. Exhibits 356, 471, 480, 481)

Based on the evidence presented, the Court finds that the Government proved
beyond a reasonable doubt that Defendant violated 18 U.S.C. § 287, and thus finds her
**GUILTY of Count 60**.

**Count 61** of the Indictment charges that between on or about March 19, 2001,
and on or about February 18, 2003, in the Northern District of Ohio, Eastern Division,
Defendant, along with another, did knowingly use, cause to be used, and aid and abet the
use, without lawful authority, a means of identification of another person with the intent
to commit unlawful activity that constitutes a violation of federal law, or that constitutes
a felony under any applicable state or local law, such conduct affecting interstate or
foreign commerce, including the names and Social Security numbers of Joseph M.
Richardson, Wendy Calliens, Kenneth Chappell, Donna S. Curry, Wendy A. Smith and
Andrew Hollis III used by Defendant to submit fraudulent claims for refunds to the IRS

without the named person's knowledge or consent in violation of 18 U.S.C. § 1028(a)(7) and 2.

In order to find Defendant guilty on Count 61, the Government must prove beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028 (a)(7).  That statute states in pertinent part:

> (a) Whoever, in a circumstance described in subsection (c) of this section
>
> (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; [has committed an offense against the United States.]

Based on the facts discussed in Counts 38 and 46 above, it is evident that Defendant knowing used, without lawful authority to do so, Joseph M. Richardson's Social Security number to fraudulently file federal tax returns for the years 2000 and 2001, thus violating Federal law.

Based on the facts discussed in Count 51 above, it is evident that Defendant knowingly used, without lawful authority to do so, Wendy Calliens' Social Security number to fraudulently file a federal tax return for the year 2001, thus violating Federal law.

Based on the facts discussed in Count 52 above, it is evident that Defendant knowingly used, without lawful authority to do so, Kenneth Chappell's Social Security number to fraudulently file a federal tax return for the year 2001, thus violating Federal law.

Based on the facts discussed in Count 53 above, it is evident that Defendant knowingly used, without lawful authority to do so, Donna S. Curry's Social Security

number to fraudulently file a federal tax return for the year 2001, thus violating Federal law.

Based on the facts discussed in Count 54 above, it is evident that Defendant knowingly used, without lawful authority to do so, Wendy A. Smith's Social Security number to fraudulently file a federal tax return for the year 2001, thus violating Federal law.

Based on the facts discussed in Count 57 above, it is evident that Defendant knowingly used, without lawful authority to do so, the Social Security number of Andrew Hollis III, to fraudulently file a federal tax return for the year 2002, thus violating Federal law.

The evidence presented in the Counts discussed above demonstrates that  the Government proved beyond a reasonable doubt that Defendant violated 18 U.S.C. § 1028 (a)(7), and thus the Court finds Defendant **GUILTY of Count 61**.

**CONCLUSION**

For the reasons listed above, the Court finds Defendant GUILTY of Counts 1 through 9, 11 through 16, 21, 26 through 56, and 58 through 61.  The Court finds Defendant NOT GUILTY of Counts 22 through 25 and Count 57.  Count 10 was dismissed on motion by the Government.

So ordered.

_____*s/ Judge John R. Adams*_____
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT